# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DIVISION OF TEXAS
## BEAUMONT DIVISION

No. 1:09-CV-496

LOUIS CHARLES HAMILTON, II

                Plaintiff

v.

JOSEPH L. TRAIL, ET AL.

                Defendants

**Report and Recommendation
of United States Magistrate Judge**

This *pro se* and *in forma pauperis* action is referred to the undersigned pursuant to General Order 05-07.[1]

## I. Parties; Nature of Complaint; Factual Background

*A. Parties*

Plaintiff Hamilton is a resident and domiciliary of Port Arthur, Texas. Defendants, also residing and domiciled in Port Arthur, are Joseph L. Trail ("Trail"), Steve Johnson ("Johnson"), Ulyssess Grant Stewart ("Stewart"), Kendra Lewis ("Lewis"), and Brian Floyd ("Floyd").[2]

---

[1] General Order 05-07 refers management of all pretrial matters in *pro se* actions to magistrate judges.

[2] Trail and Stewart have appeared. Johnson has been served, but has filed no responsive pleading or otherwise appeared. Lewis and Floyd have not been served with plaintiff's complaint and a summons. The court could not order the United States Marshall to serve these defendants because Hamilton did not provide the court with their addresses, despite being ordered to do so on at least two occasions.

*B. Underlying Facts*

Hamilton's 88-page hand-written complaint is diffuse, difficult to follow, and, despite its length, devoid of sufficient factual matter which, if accepted as true, states a claim to relief that is plausible on its face. Consequently, the court convened a non-adversarial *Spears* evidentiary hearing to develop the factual basis for Hamilton's numerous causes of action.[3]

From the sparse relevant factual averments in the complaint, and from Hamilton's sworn testimony at the *Spears* hearing, the undersigned determines that Hamilton rests his case on the following alleged facts which, despite the court's best efforts, still portray a disconnected and cloudy portrait of improbable events:

Defendant *Johnson* owns a single family home in Port Arthur, Texas that incurred substantial hurricane damage. Defendant *Trail* hired Hamilton to repair Johnson's home and other properties located in Port Arthur. Trail allegedly permitted Hamilton to live within the home while making repairs. Essentially, Hamilton bartered his services for rent, although Trail occasionally gave Hamilton extra "pocket money."

Trail wanted to purchase the home from Johnson. Trail supposedly volunteered to make repairs at his own expense to demonstrate to Johnson his good faith interest in purchasing the property. Trail then arranged with Hamilton to make the repairs in exchange for rent-free occupancy of the dwelling. Trail also retained the services of Stewart, a plumber.[4]

---

[3] See Spears v. McCotter, 766 F.2d 179, 181-82 (5th Cir. 1985) (holding that an evidentiary hearing may be used to develop the factual basis of a *pro se* complaint).

[4] According to Hamilton, Stewart receives Social Security disability benefits, but is not disabled.

Hamilton further alleges that Trail promised to enter into a rent-to-own agreement with him after Trail purchased the property from Johnson. But, as bad luck would have it, the relationship between Trail and Johnson soured, and no sale from Johnson to Trail occurred. Hamilton, however, continued to occupy the premises.

Hamilton alleges that both Johnson and Trail then hired Stewart, the plumber, to harass and intimidate Hamilton in an effort to remove him from the property. There were several physical altercations between Hamilton and Stewart. Hamilton refused to leave the home because he believed *he* was the true owner of the property by virtue of the repair work he performed and Trail's earlier promises to enter into a rent-to-own contract with him.

Stewart's efforts to remove Hamilton failed. Johnson and Trail then retained defendants Lewis and Floyd who posed as record owners of the property. Lewis and Floyd offered to rent the home to Hamilton for $450.00 per month, with a $300.00 security deposit, but Hamilton refused. Hamilton stayed in the home for another six months after refusing Lewis and Floyd's offer, but ultimately vacated the property in August 2009.

## C. *Claims*

Based on these alleged facts, Hamilton considers himself a victim. He believes he was subjected to unlawful "employment discrimination" and "reverse disability discrimination" because defendant Stewart, who receives disability benefits, was awarded the plumbing component of the repair work instead of Hamilton. *Spears* Hr'g Tr. 31:4-18. In other words, Hamilton believes he was discriminated against because a person with a disability was favored over Hamilton because of his lack of a disability. He also perceives a violation of a

federal fair housing statute because he is black and was treated unfairly with respect to his claim for occupancy and ownership of the hurricane-damaged home in question. Finally, he also asserts state-law claims for breach of contract, battery, intentional infliction of emotional distress, and defamation.

## II. Initial Screening of In Forma Pauperis Actions

To promote the American ideal of equal justice for all, federal law permits indigent persons to bring *in forma pauperis* actions in federal court without paying fees and costs. See 28 U.S.C § 1915(a). To guard against abuses of this free access, however, subsection (e)(2) of section 1915 requires the court to screen such a case and dismiss it "at any time" if it determines that the action is frivolous or malicious. 28 U.S.C § 1915(e)(2)(B)(i); see also Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986) (district court is vested with especially broad authority in determining if dismissal is appropriate).

A claim is frivolous, when it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Pugh v. Parish of St. Tammany, 875 F.2d 436, 438 (5th Cir. 1989) (modifying Cay v. Estelle, 789 F.2d 318, 326 (5th Cir. 1986)). Such claims often include allegations that are "fanciful," "fantastic," and "delusional." Denton v. Hernandez, 504 U.S. 25, 33, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992) (citations omitted).

Along the same line, a court may dismiss *sua sponte* an *in forma pauperis* complaint which, while not factually frivolous, fails to state a claim upon which relief can be granted under either 28 U.S.C. § 1915(e)(2)(B) or Rule 12(b)(6), Federal Rules of Civil Procedure, provided that the plaintiff has alleged his best case and the procedure employed is fair. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998).

When screening *in forma pauperis* complaints for frivolousness or failure to state a claim, however, a court must construe allegations of *pro se* litigants liberally. Such litigants are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This means that lay plaintiffs need not necessarily neatly place their factual allegations within a correct legal framework. See, e.g., Randall v. Reeves, 189 F.3d 466 (5th Cir. 1999) (unpublished table decision) (construing a complaint that improperly pled Texas Tort Claims Act violations as alleging state common law claims in the context of the alleged facts).

### III. Discussion

Hamilton's factual allegations are so far fetched that the court might justifiably dismiss this action out-of-hand as frivolous, especially when taking into account Hamilton's litigious history. In the last thirteen years, he has filed 26 *pro se* cases in various federal district courts.[5] Not all have reached final adjudications, but, to date, none has succeeded on the merits. Hamilton testified at the *Spears* hearing that he also has filed an additional 15 to 22 cases in various state courts. *Spears* Hr'g Tr. 8:16-25. Nevertheless, the undersigned elects to address substantively the various claims asserted here.

A.  *Failure to Satisfy Mandatory Preconditions To Suit*

Federal anti-discrimination statutes typically provide for *administrative* enforcement by a governmental agency. They further authorize *private* enforcement through judicial actions by persons who consider themselves as victims of unlawful discrimination. But, when the statute or governmental

---

[5] The Public Access to Court Electronic Records database, better known as "PACER," which provides online access to federal appellate, district and bankruptcy court records, indicates that Hamilton has filed 26 *pro se* cases. See https://pcl.uscourts.gov/view?rid=Uyujwk8pppROvRJ0JEcv3Mwgjbln3W8abK92Srv8&page=1 (last visited June 10, 2011).

agency regulation provides administrative remedies, prior exhaustion of those remedies is ordinarily a mandatory precondition for filing a private enforcement action. See McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992), *superseded by statute on other grounds*, Prison Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (1996); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

Such is the case for both Title VII of the Civil Rights Act of 1964 ("Title VII"), which prohibits discrimination by an "employer" on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and the Americans With Disabilities Act ("ADA"), which prohibits employment discrimination against a qualified individual with a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). When seeking to enforce either statute through a private suit, an aggrieved person must first exhaust administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and by securing from EEOC a "right-to-sue letter." Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002) (citing Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973).

Hamilton failed to file any charge whatsoever with the EEOC or any other state or local agency before instituting this suit. *Spears* Hr'g Tr. 35:19-36:1. Therefore, because Hamilton has failed to exhaust his administrative remedies prior to filing suit, his Title VII employment discrimination and his ADA disability discrimination claims must be dismissed.

Even if Hamilton had satisfied the mandatory precondition to suit, these claims would be dismissed in any event. Title VII only applies to employers with fifteen or more employees. See 42 U.S.C. § 2000(e)(b). Assuming *arguendo* that Hamilton was an employee (not an independent contractor), he testified that he and Stewart were the *only* employees of Trail. Similarly, "reverse disability discrimination" claims such as contemplated by Hamilton are not permitted under ADA. 42 U.S.C. § 12201(g) (ADA Amendments Act of 2008); Huber v. Wal-Mart Stores, Inc., 486 F.3d 480, 483 (8th Cir.), cert. dismissed, 552 U.S. 1074, 128 S.Ct. 742, 169 L.Ed.2d 579 (2007).

Finally, it avails Hamilton nothing for the court to construe his complaint so liberally as to include an employment discrimination claim under the Civil Rights Act of 1866, codified in 18 U.S.C. § 1981 ("Section 1981"). While Section 1981 provides a duplicate remedy for discrimination prohibited under Title VII, and prior exhaustion of administrative remedies is not a precondition for a Section 1981 suit, Hamilton fails to proffer any factual averment that he was treated unfairly *because* he is black, or that a similarly situated white or other non-minority employee was treated more favorably under the same or similar circumstances. Indeed, defendants Johnson, Trail, and Stewart are black like Hamilton, and defendants Lewis and Floyd, while white, played no role in Hamilton's "employment."

B.   *Fair Housing Act*

Generally, the Fair Housing Act ("FHA") makes it unlawful to refuse to sell or rent, or to otherwise discriminate regarding the sale or rental of a dwelling because of race, color, religion, or disability. 42 U.S.C. § 3604. While single-family houses sold or rented by an owner are generally covered by the Act, an exemption exists for such houses sold or rented without the use of the

facilities or services of a real-estate agent and without publication of an advertisement violative of 42 U.S.C. § 3604(c), as long as the private individual does not own more than three such houses at one time, and, if the seller was not the most recent resident of the house, applies this exemption to only one sale in any 24 month period.  42 U.S.C. § 3603(b)(1).

Here, Hamilton has no FHA claim because the single-family home exemption above clearly applies.  The alleged and contemplated real estate transaction between Hamilton and Trail was established without a real-estate agent and without publication of any advertisement whatsoever.  Neither was Trail the owner of *more than* three such houses at the time,[6] and while Trail was not the most recent resident of the house, there is no evidence that he has applied this exemption to another sale within any 24 month period.

Even were there no exemption, Hamilton's FHA claim would be dismissed.  A *prima facie* case of housing discrimination requires showing that:  (1) plaintiff is a member of a protected class; (2) plaintiff sought and was qualified to rent or purchase housing; (3) plaintiff was rejected; and (4) the housing opportunity remained available to other renters or purchasers.  Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003).  While Hamilton is a member of a protected class (black, African-American), he was not qualified to rent or purchase the home.  He admitted at the *Spears* hearing that he did not qualify for financing, nor did he have the cash to purchase the home outright or pay monthly rent.  *Spears* Hr'g Tr. 34:12-16.  Additionally, the individual he sought to rent or purchase the home from, Trail, was not the true owner.  One can hardly "qualify" to rent or purchase property from an individual who does not have legal rights to sell or

---

[6] Hamilton testified that Trail owned only three houses, his personal residence and two rental properties.

rent the property. Therefore, Hamilton has failed to state a *prima facie* case of discrimination in violation of the Fair Housing Act.

*C. State Law Claims*

Hamilton asserts additional causes of action (e.g., breach of contract, battery, etc.) that are recognized only under Texas state law. Title 28, United States Code, Section 1367, confers on federal courts supplemental jurisdiction over such claims when they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." Therefore, if Hamilton's "federal question" claims were viable, this court would have discretion to entertain the related claims even though they are governed by state law.

Here, however, the court must dismiss all potential claims over which it has *original* jurisdiction. It is, therefore, constrained to decline to exercise its *supplemental* jurisdiction. See 28 U.S.C. § 1367(c)(3).

Refusal to entertain state-law claims pursuant to supplemental jurisdiction is favored when, as here, (1) federal claims to which they are pendent are dismissed and (2) factors of judicial economy, convenience, and fairness to litigants are not present. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51, 108 S. Ct. 614, 98 L. Ed.2d 720 (1988)); Mendoza v. Murphy, 532 F.3d 342, 346 (5th Cir. 2008); Dixon v. Ford Motor Credit Co., 252 F.3d 1356, No. 00-31154, 2001 WL 422726, at *3 (5th Cir. Apr. 2, 2001); Guzzino v. Felterman, 191 F.3d 588, 594 (5th Cir. 1999). Here, all federal claims should be dismissed, and because this action is in its infancy (some defendants have yet to appear) and no discovery has occurred, judicial economy and convenience do not counsel exercising supplemental jurisdiction.

Similarly the fairness-to-litigants factor does not weigh in favor of exercising supplemental jurisdiction. Texas law tolls its statute of limitations during pendency of Hamilton's federal action. See Tex. Civ. Prac. & Rem. Code Ann. § 16.064 (Vernon 1997) (allowing sixty day period for litigants to file their claim in state court after dismissal in federal court for want of jurisdiction); Finger Furniture Co., Inc. v. Mattress Firm, Inc., No. H-05-0299, 2005 WL 1606934, at *5 (S.D. Tex. July 1, 2005). Therefore, Hamilton will not be prejudiced by this court's declination of supplemental jurisdiction.

### IV. Recommendations

1. The court should dismiss *sua sponte* Hamilton's purported federal claims because they – even as amplified and clarified at an evidentiary *Spears* hearing – fail to state a claim upon which relief can be granted for deprivation or violation of any federally protected right.

2. The court should dismiss all remaining claims governed by state law for lack of original, subject-matter jurisdiction.

SIGNED this __14__ day of June, 2011.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge